533 So.2d 961 (1988)
STATE of Louisiana
v.
Anthony Paul BELLARD.
No. 88-KK-0374.
Supreme Court of Louisiana.
October 31, 1988.
Rehearing Denied December 1, 1988.
*962 John M. Crocket, Glen Vamvoras, Public Defenders Office, Lake Charles, for applicant.
William J. Guste, Jr., Atty. Gen., Richard P. Ieyoub, Dist. Atty., Saundra M. Issac, Elizabeth S. McCall, Patricia Head-Minaldi, Asst. Dist. Attys., for respondent.
COLE, Justice.
The grand jury indicted Anthony Paul Bellard for aggravated rape, a charge later reduced to violation of La. R.S. 14.81.2,[1] molestation of a juvenile. After trial, a jury found Bellard guilty of molesting his 5-year-old niece, who contracted gonorrhea from the incident. He was sentenced on September 3, 1986 to five years at hard labor. On appeal, the defendant assigned as error the admission of evidence of his own positive test for gonorrhea. He contended the introduction of such evidence violated La. R.S. 15:476 which protects confidential communications between a patient and his physician.
La.R.S. 15:476 provides:
No physician is permitted, whether during or after the termination of his employment as such, unless with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him.
The court of appeal affirmed the conviction, holding the evidence was properly admitted because it was not protected by the physician-patient privilege since circumstances of the test precluded a finding of confidentiality. State v. Bellard, 514 So.2d 513 (La.App. 3d Cir.1987). On writ application to this Court, we initially reversed and remanded because the physician who diagnosed Bellard's gonorrhea was not courtappointed. State v. Bellard, 521 So.2d 1140 (La.1988). Following that action, the state applied for rehearing and we granted certiorari to consider whether confidentiality of the test results was waived or whether the suspension of physician-patient privilege in La. R.S. 14:403(F) applies to this case. La. R.S. 14:403(F) was raised for the first time in the application for rehearing filed by the state.

FACTS
On September 20, 1985, Dr. Melvin Morris of Lake Charles contacted the local Department of Health and Human Resources (DHHR) child protection agency to report a diagnosis of gonorrhea in a 5-year-old child. Based on this evidence of sexual abuse, social worker Gwendolyn Thompson began an investigation of the child's family and identified her uncle, 22-year old Anthony Paul Bellard, as a suspect. As part of its investigation, DHHR made at least three requests to Mr. Bellard that he submit to a test for venereal disease, all of which he refused. As is also DHHR policy, Ms. Thompson reported the alleged abuse to the Calcasieu Parish sheriff's office.
At the sheriff's office, Detective Robert Fry was assigned to the case. Based on an interview with the victim and the information from DHHR, Detective Fry spoke with Mr. Bellard on October 23. During this meeting, Fry told the defendant he was *963 suspected of abusing his niece, read him the Miranda rights, and advised him to be tested for gonorrhea in order to protect his own health. Detective Fry then provided Mr. Bellard with dates and times of the Calcasieu Parish Health Unit's weekly V.D. clinic.
It was not until November 26, however, that Mr. Bellard did indeed visit the V.D. clinic. He had no symptoms, but a culture was taken and four days later, the fact he had gonorrhea was confirmed. It is unclear if the defendant was already in custody when he returned to the health unit, but he was eventually treated on December 17.[2]
Meanwhile, Detective Fry obtained a subpoena duces tecum for the results of Mr. Bellard's venereal disease test and a warrant for his arrest. The defendant was charged and indicted and the gonorrhea test result documents and testimony concerning them were subsequently introduced at trial.
A videotaped deposition of the victim was introduced at trial in lieu of direct testimony, a procedure allowed under La. R.S. 15:440.1, et seq. The tape showed her to be a bright, articulate child who was able to clearly describe what happened between her and her uncle.
At the time of the incident, the victim was living in her grandmother's household with other family members, including the 22-year old uncle, Anthony. Her grandmother had gone to the doctor, leaving the victim with Anthony, whom the child called "Dolly." The victim had been playing in the backyard with her 10-year old sister and a cousin. When she went into the house to go to the bathroom, the defendant forcibly took off her clothes and pushed her down onto his bed.
Although the child was crying and trying to get up, the defendant, who had also removed his own clothing, threw her back onto the bed. It was not clear from the victim's testimony whether complete sexual penetration occurred. Nevertheless, during her videotaped testimony, she demonstrated with anatomical male and female dolls how the defendant got on top of her, thrust his body against hers, then got off and back on top of her more than once.
When the defendant stopped, the victim was crying, but her uncle threatened to whip her if she told anyone what had happened. She got dressed, and testified she was bleeding from the incident. When her sister asked her why she was crying and her stepmother asked about the blood on her clothes, she did not tell what had happened because she was afraid of her uncle. The incident came to light when she was subsequently diagnosed as having gonorrhea, a disease which testimony at trial showed is transmitted through sexual contact.

ADMISSIBILITY OF TEST RESULTS
Although not called to our attention by counsel, we find La. R.S. 46:56 determinative of aspects of this case.
La. R.S. 46:56 provides:
A. [I]nformation contained in case records of clients of the Department of Health and Human Resources shall be confidential and, except as otherwise provided, it shall be unlawful for any person to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of ... client case records or the information contained therein for any purpose not directly connected with the administration of the programs of the department.
B. For the purposes of this Section, "case records" are [among others] ... medical service records, [and] records and investigative reports on abuse or neglect of children [.]
. . . .
F. The following information shall not be subject to waiver and shall not be *964 released to applicants, recipients, or outside sources, except those outside sources engaged in the administration of the programs of the department:

(1) Records pertaining to ... investigations of abuse and neglect of children ...
. . . .
(4)(a) For the purpose of this Subsection, those outside sources engaged in the administration of the programs of the Department of Health and Human Resources pertaining to child welfare services shall be local child service agencies, including but not limited to hospitals, clinics, schools, and counterpart agencies in other states engaged in delivering family and children's services, and local and state law enforcement agencies, including... district attorneys.... Information may be released by the department... to an agency engaged in enforcing or prosecuting violators of the child abuse and neglect law or perpetrators of acts against children in violation of the criminal statutes of this state....
Defendant was tested for gonorrhea at the Calcasieu Parish Health Unit, a division of the Department of Health and Human Resources. The local child protection agency, as part of its investigation of the sexual abuse of the victim, had authority to obtain defendant's medical test documents from the clinic. Clearly, under La. R.S. 46:56(F)(4)(a), the child protection agency also had authority to release those records to the district attorney's office. It follows the records and the test results noted therein were not confidential, the thrust of the statute being to make such information available to the district attorney for the purpose of prosecution. The information was released "to an agency engaged in ... prosecuting ... perpetrators of acts against children in violation of the criminal statutes of this state...."
It also follows the testimony of the medical witnesses in this case relating to the records was admissible. Defendant's objection to the testimony of Dr. W. Edgar Percy, Jr. was without merit. Dr. Percy's testimony was elicited from him not only as Director of the health unit and custodian of the records at issue, but also as an expert in the field of transmission of venereal diseases. He was qualified to explain the records and to express his opinion of the manner in which gonorrhea is transmitted. The testimony of Opal M. Hair, an expert in the field of culture identification, was of like nature.
We find the medical records and the testimony relating to those records to be admissible under La. R.S. 46:56.

WAIVER OF PHYSICIAN-PATIENT PRIVILEGE
Although we find R.S. 46:56 dispositive in this case, we still consider the issue of waiver of the physician-patient privilege under La. R.S. 14:403(F), since we believe the two statutes can be read in pari materia to reveal a broad legislative intent to decrease privileges for perpetrators of child abuse and to increase protection for victims of such abuse.[3]
Defendant argues testimony concerning proof of his gonorrhea was improperly admitted because the physician-patient privilege, provided for in La. R.S. 15:476, attached to the relationship between him and the medical witnesses who testified.
We interpreted La. R.S. 15:476 in State v. Walker, 376 So.2d 92 (La.1979), where the defendant was being held in parish prison on a charge of aggravated rape. While in jail, he consulted the prison medical director who diagnosed and treated defendant for gonorrhea. Over objection, the doctor was allowed to testify at trial concerning his treatment of Walker. On appeal, we found the evidence was not discovered during a routine examination performed *965 upon defendant's arrival in jail, but was rather the result of defendant's voluntary consultation with the prison physician. Hence the privilege attached and the evidence should have been excluded.
In this case, the lower courts found the defendant did not voluntarily seek treatment or diagnosis and, therefore, the physician-patient privilege did not attach. State v. Bellard, 514 So.2d 513 (La.App. 3d Cir.1987). We disagree. The court of appeal's findings that arrangements for the test were made by child protection personnel and that the defendant was accompanied to the health unit by Detective Fry are unsupported in the record. Bellard appears to have sought treatment on his own at a free V.D. clinic offered by a public health unit. His conduct cannot be interpreted as having been such that the expectation of confidentiality under La. R.S. 15:476 was expressly waived.
However, though the physician-patient privilege attached, such privilege is not inviolable. Since privileges are created solely by the legislature, they can also be modified or withdrawn. State v. Smith, 489 So.2d 255 (La.App. 5th Cir.1986); State v. Fuller, 454 So.2d 119 (La.1984). Such abrogation has been provided in the context of La. R.S. 14:403, the child abuse reporting statute. La. R.S. 14:403(F) provides:
(F) Any privilege between husband and wife, or between any professional person and his client, such as physicians, and ministers, with the exception of the attorney and his client, shall not be grounds for excluding evidence at any proceeding regarding the abuse or neglect of the child or cause thereof.
The defendant argues this exception does not apply to criminal proceedings and, even if it does, that he does not fit within the class of persons whose privilege is suspended.
Because of the unusual facts under which this issue arises, the applicability of R.S. 14:403(F) to criminal prosecutions has rarely been argued. In State v. Smith, 489 So.2d at 263-64, the issue of suspension of privilege under R.S. 14:403(F) was raised but not addressed by the court since the testimony was inadmissible on other grounds.
Other jurisdictions having a broad waiver of privilege in their child abuse reporting statutes have applied the waiver in criminal proceedings. See State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673 (1987); State ex. rel. D.M. v. Hoester, 681 S.W.2d 449 (Mo. 1984) (en banc); State v. Efird, 309 N.C. 802, 309 S.E.2d 228 (1983); State v. Fagalde, 85 Wash.2d 730, 539 P.2d 86 (1975) (en banc). La. R.S. 14:403(F), is a provision contained within the "Miscellaneous Crimes and Offenses" section of our criminal law. It waives "any privilege" at "any proceeding regarding the abuse or neglect of the child or the cause thereof." This criminal proceeding clearly deals with the cause of the abuse of the child victim and, therefore, the waiver of privilege applies.
Defendant's next argument is that, if the waiver applies in criminal proceedings, it applies only to certain persons and he does not fit within the class of persons reached by the statute.
To determine the meaning of criminal statutes, we must give them "a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." R.S. 14:3; State v. Pierre, 500 So.2d 382 (La.1987).
The version of La. R.S. 14:403 in effect when the act was committed and at time of trial[4] provided:
A. The purpose of this section is to protect children whose physical or mental health and welfare are adversely affected by abuse and/or neglect and may be further threatened by the conduct of those responsible for their care and protection by providing for the mandatory reporting of suspected cases by any person having reasonable cause to believe that such case exists. It is intended that as a result of such reports the protective *966 services of the state shall be brought to bear on the situation in an effort to prevent further abuses, and to safeguard and enhance the welfare of these children. This section shall be administered and interpreted to provide the greatest possible protection as promptly as possible for such children.

B. For the purpose of this Section, the following terms shall mean:
(3) "Abuse" is the infliction, by a person responsible for the child's care, of physical or mental injury or the causing of the deterioration of a child including but not limited to such means as sexual abuse,
. . . .
(5) For purposes of Paragraph (3), ... "a person responsible for a child's care" includes the child's parent, guardian, foster parent, an employee of a public or private residential facility, an employee of any public or private day care center, or other person providing residential care.

By providing for waiver of privilege within the context of the child abuse reporting statute, we believe the legislature intended to abrogate the privilege in cases where reports are mandated. Thus, R.S. 14:403(F) would apply in proceedings where the defense of privilege is raised by a person "responsible for the child's care."
Defendant would have us interpret the provisions in R.S. 14:403 as requiring reports of abuse only where the reporter suspects abuse by one "legally or contractually" responsible for the child. He argues he had no such responsibility for the victim's care and, therefore, cannot be reached by the waiver.
Clearly, within the context of a child abuse reporting statute, a person can be responsible for the care of a minor child without standing in loco parentis to that child. Pope v. State, 284 Md. 309, 396 A.2d 1054, 1063 (1979). It has also been found that a babysitter is a person "responsible for a child's care" within the context of a child abuse reporting statute. State v. Odenbrett, 349 N.W.2d 265, 267 (Minn. 1984). La. R.S. 14:403 includes in the class of persons responsible for a child's care "[an]other person providing residential care."
Considering the entire record, it is reasonable to conclude the defendant and the victim were members of the same household. The child, who was 5 years old at the time, was left in the care of defendant while her grandmother went to the doctor. She was molested by the defendant when she went in the house to go to the bathroom. Keeping in mind the admonition of the legislature that R.S. 14:403 "be administered and interpreted to provide the greatest possible protection" for victims of child abuse, we find the waiver provision in R.S. 14:403(F) applicable to the facts in this case. Accordingly, the testimony of the physician concerning proof of defendant's gonorrhea was also properly admitted under La. R.S. 14:403(F).
CONVICTION AND SENTENCE AFFIRMED.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and assigns reasons.
DIXON, C.J., respectfully dissents.
The words of the statute are clear and unmistakable, and violate no provision of the constitution. Amending the statute is a power relegated to the legislature not the courts.
CALOGERO, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
Dennis, J., concurs and joins in the holding of the opinion based on the Court's application of La. R.S. 46:56 to the circumstances in this case, but does not join in the balance of the opinion discussing La. R.S. 14:403 believing it to be dicta unnecessary to the decision in this case.
LEMMON, Justice, concurring.
The policy of the physician-patient privilege is to protect the professional relationship between these parties. Under the circumstances of this case, however, the purpose of the privilege was not disserved by *967 the disclosure of the test results. See 8 Wigmore, Evidence § 2380a (McNaughton rev. 1961). In all probability defendant would have sought the medical examination whether or not the privilege existed.[1] If he had not done so, the prosecutor could have compelled him to submit to the test for gonorrhea once the child had identified him as her molester. See State v. Martin, 404 So.2d 960 (La.1981). Because defendant had already submitted to the test, it would have been oppressive for the prosecutor to compel him to do so again to insure that the results were admissible. Exclusion of the test results under these circumstances would serve little purpose but to suppress the truth which ought to be disclosed and which easily could have been discovered.
CALOGERO, Justice, dissenting.
The court finds that the Legislature intended two statutes, La. R.S. 46:56 and La. R.S. 14:403(F) to accomplish a waiver of the physician-patient privilege provided by La. R.S. 15:476. They find La. R.S., 46:56 dispositive, then consider the issue of the waiver of the physician-patient privilege under La. R.S. 14:403(F), and assert that the two statutes read together "reveal a broad legislative intent to decrease privileges for perpetrators of child abuse and to increase protection for victims of such abuse." In my opinion these statutes, do not, either separately, or read together, support the suggestion that the legislature abrogated the special privilege afforded the physician-patient relationship in a case such as this.
La. R.S. 46:56 establishes administrative guidelines for the release of confidential records. That statute does indeed authorize the release to the District Attorney's office of records, that are otherwise confidential, to assist in the prosecution of child abuse cases. It does not state that such records are admissible as evidence in court and nowhere does the statute specifically abrogate the physician-patient privilege. Nowhere does it permit the physician, without the patient's express consent, "to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition...." (R.S. 15:476) The statute simply extends the class of agencies privy to the confidential records of the DHHR to other agencies which perform functions related to the administration of the DHHR programs.
Nor does La. R.S. 14:403 support the state's position. La. R.S. 14:403, commonly known as the child abuse reporting law, was enacted to protect abused children by mandating that suspected cases be reported, and by providing procedures to facilitate the removal of children from harmful environments.
Since its amendment in 1972, the stated purpose of R.S. 14:403 has not been the prosecution and conviction of persons responsible for abusing children under any other provision of the Criminal Code, but "... to protect children whose physical or mental health and welfare are adversely affected by abuse and/or neglect and may be further threatened by the conduct of those responsible for their care and protection..." R.S. 14:403 A, Acts, 1972, No. 556. As the Fifth Circuit Court of Appeal noted in State v. Smith, supra, 489 So.2d at 263, "LSA-R.S. 14:403, commonly known as the child abuse reporting law, was enacted in an effort to protect neglected and abused children by mandating that suspected cases be reported and by providing procedures whereby the protective services of the State could be immediately implemented to remove children from a harmful environment."
By the time of trial of this defendant's case in June of 1986, the statute specifically defined "abuse" as "... the infliction, by a person responsible for the child's care, of physical or mental injury or the causing of the deterioration of a child including but not limited to such means of sexual abuse, [or] sexual exploitation...." R.S. 14:403 *968 B(3) [emphasis supplied]. In order to prevent such abuse from continuing, the statute calls for: (1) the reporting of suspected cases of child abuse to the parish authorities, a mandatory duty in the case of physicians, R.S. 14:403 C; (2) investigation of those complaints by the parish child welfare unit, R.S. 14:403 G; and disposition of those complaints according to the conclusions reached by the local child welfare unit, a matter also covered in R.S. 14:403 G. Apart from providing misdemeanor penalties for a variety of infractions which do not involve the persons allegedly responsible for the abuse, the statute's ultimate sanctions are civil in nature: loss of custody over the child as an emergency matter, followed by an adjudication in juvenile court that the child is "in need of care." That judgment may then lead to an extended custody over the child by the state under the supervision of the juvenile court. See, C.J.P. Arts. 84-85; 87-89. R.S. 14:403 thus provides an immediate response to a problem that may lead to complete termination of parental rights under R.S. 13:1600 et seq. Under those civil provisions, an abused child is also one "who has been abused sexually...." R.S. 13:1600(1), and parental rights may terminate on a showing that "[t]he abuse or neglect of the child by the parent or parents results from a crime committed against the person of the child or when a parent is an accessory to such a crime." R.S., 13:1601 A(1).
At the time of trial in 1986, R.S. 14:403 B(5) stated that for purposes of "abuse," "`... a person responsible for a child's care' includes the child's parent, guardian, foster parent, an employee of a public or private residential facility, an employee of any public or private day care center, or other person providing residential care." In 1987, the legislature then rewrote the statute and changed the definition of "abuse" to "the infliction by a caretaker of physical or mental injury ... by such means as sexual abuse [or] sexual exploitation...." "Caretaker" is defined in the 1987 version as "any person legally obligated to provide or secure adequate care for a child, including a parent, tutor, guardian, legal custodian, foster home parent, an employee of a public or private day care center, or other person providing residential care."
The 1987 amendment also made other significant changes that ultimately do not diminish the force of defendant's argument. R.S. 14:403 A now states that the purpose of the act is "... to protect sexually abused children and children whose physical or mental health and welfare are substantially at risk of harm by abuse or neglect and may be further threatened by the conduct of those responsible for their care and protection...." [emphasis supplied]. "Sexual abuse" is not defined along with "abuse" and "neglect" in R.S. 14:403 B, but R.S. 14:403 G, providing for the screening and investigation of reports to the local child welfare agency, states that "sexual abuse" "... is the involvement of the child in any sexual act with a parent or caretaker, or the aiding or toleration by the parent or the caretaker of the child's sexual involvement with any other person...." [emphasis supplied]. It is not clear why the legislature put the (overlapping) definition of "sexual abuse" in a separate section, but it retained the focus on parent or caretaker, and in all three cases of "abuse," "neglect," and "sexual abuse," the sanctions remain the same. The child protection agency may apply to the juvenile court for an emergency order removing the child from the custody of his parent or caretaker and may alert the District Attorney's office "for evaluation of whether a child in need of care petition should be filed in the court with juvenile jurisdiction...." R.S. 14:403 G.
While the 1987 amendment may not have been in effect at the time of defendant's trial, it nevertheless clarified the definition of "persons responsible for care" under the previous law. Given the stated purposes of R.S. 14:403, and the kind of sanctions it provides against those persons responsible for the care of the child, there is no merit to the state's argument that the waiver provisions in R.S. 14:403 F are detached and free floating from the rest of the statute, and that they therefore apply against *969 anyone charged with the abuse of a child. Read fairly (in the 1985 as well as 1987 versions), R.S. 14:403 F calls for the waiver of the physician-patient privilege in any proceeding involving the "abuse" (including "sexual abuse") of a child by those legally responsible for the child's care, such as a parent or legal guardian. This result is consistent with the overall tenor of the statute. Waiver of a parent's or other responsible adult's doctor-patient privilege comes as an incidental benefit to the state arising out of the principal effect of R.S. 14:403 F, which dates back to the original 1964 version of the statute directed solely to physicians; waiver of the victim's doctor-patient privilege, otherwise left to the discretion of the child's "parent, tutor, [or] curator" in civil proceedings, R.S. 13:3734, or those persons the local child welfare unit must investigate under R.S. 14:403 C, and those persons the parish juvenile court must contend with if the complaint of child abuse appears to warrant removal of the child from the home.
The state argues and the majority finds the legislature meant for the waiver of the victim's physician-patient privilege to apply in any proceeding involving the abuse of a child by a person responsible for the child's care, including a criminal prosecution for sexual abuse that may also lead to termination of parental rights under R.S. 13:1600 et seq. I would not reach the question whether R.S. 14:403(F) applies in criminal cases for in this case this defendant was not charged with the legal care of his niece at the time of the offense. [He apparently simply resided in the same household.]
Since neither statute abrogates the privilege afforded by R.S. 15:476, which protects "the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation", that privilege still exists, unaffected in this case. While I did not originally agree with that court's summary reversal of defendant's conviction, my considered view now is that the conviction should indeed be reversed. Accordingly, I dissent from the court's affirming the defendant's conviction on rehearing.
NOTES
[1] La. R.S. 14:81.2 provides:

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
[2] We have noted La. R.S. 40:1065 which deals with the reporting of venereal diseases and which requires physicians to report the name and address of a person affected with a venereal disease if he fails or refuses for a period of ten days after diagnosis to submit to proper treatment. We find it unnecessary to consider the applicability of this provision in the context of the physician-patient privilege afforded by La. R.S. 15:476.
[3] Other laws relating generally to the subject matter are Articles 15 and 123 of the Code of Juvenile Procedure. The latter provides that reports and records concerning matters under the juvenile jurisdiction of the court may be released to a district attorney in connection with the performance of his duties. The former bestows juvenile jurisdiction over proceedings under R.S. 14:403 (which deals with child abuse and the waiver of the physician-patient privilege R.S. 14:403(F)).
[4] The statute was amended in 1986 and again in 1987.
[1] Defendant consulted the Parish Health Unit after being advised by the police to do so for the sake of his own health.