643 So.2d 860 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Philip FANGUY, Defendant-Appellant.
No. CR94-143.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*862 Edward B. Broussard, Abbeville, for State.
Ronald Melebeck, Abbeville, for Philip Fanguy.
Before DOUCET, SAUNDERS and WOODARD, JJ.
WOODARD, Judge.
The defendant, Philip Fanguy, was indicted on May 14, 1991, by the Vermilion Parish Grand Jury on the following charges:
(1) Oral sexual battery, in violation of La. R.S. 14:43.3.
(2) Intimidation of a witness, in violation of La.R.S. 14:129.1(A).
(3) Four counts of molestation of a juvenile, in violation of La.R.S. 14:81.2.
(4) Four counts of incest, in violation of La.R.S. 14:78.
After a three day trial ending on July 29, 1993, the jury found the defendant guilty of two counts of incest in violation of La.R.S. 14:78 and two counts of attempted incest in violation of La.R.S. 14:78 and 14:27. Sentencing was scheduled for November 10, 1993. Prior to sentencing, the defendant filed a Post Verdict Judgment of Acquittal which was denied immediately before sentencing. The defendant was then sentenced to serve a term of six years at hard labor on each of two counts of incest and three years at hard labor on each of two counts of attempted incest. All sentences were ordered to run concurrent with one another. Defendant now appeals from these convictions.

FACTS
The victim of these crimes, Amy Fanguy, is the biological daughter of the defendant. The defendant had received custody of Amy after a divorce, from his first wife, Sandra Maddox. After the divorce the defendant raised Amy from infancy. The defendant later remarried Bonnie Sue Breedwell but they subsequently divorced.
The crimes for which the defendant was convicted occurred from November 1990 through February 1991, while the defendant and his daughter were living in a trailer in Abbeville, Louisiana. The defendant's actions were revealed by Amy on or about February 7, 1991, when Amy visited her former stepmother, Ms. Breedwell, in Jonesboro, *863 Louisiana. While there, Amy confided to Patricia Naset, Ms. Breedwell's sister, that her father had been doing things to her such as "checking her for bumps" and "clipping her hair." Concerned with Amy's welfare, Ms. Naset called Ms. Breedwell at work and informed her of the defendant's actions. After hearing Amy's allegation, Ms. Breedwell alerted the Department of Family Services of Lincoln Parish. Thereafter, Amy was brought to Dr. James Moncrief, a pediatrician, in Ruston, Louisiana, who examined her on February 11, 1991, for possible sexual abuse. After a gynecological exam, Dr. Moncrief found Amy did not have a hymen and her vaginal opening was large enough to comfortably admit a small speculum. Dr. Moncrief observed that Amy had a slight discharge and that she had complained of a burning sensation during urination. Dr. Moncrief also observed that Amy had a small tear about a fourth of an inch long in the posterior fourchette, the area of skin just below or posterior to the vaginal opening. Dr. Moncrief noted this tear bled when touched and it was his conclusion from this type of injury that Amy had experienced sexual intercourse on at least several occasions and furthermore found there had been sexual abuse.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant argues the trial court erred in denying his Motion to Quash as the matter came to trial more than two years after the initial indictment, in violation of La.Code Crim.P. art. 578(2) which provides that in felony cases, other than capital cases, no trial shall commence after two years from the date of the institution of the prosecution.
The defendant was indicted by the Vermilion Parish Grand Jury on May 14, 1991. On June 13, 1991, defendant entered a written plea of not guilty which was filed into evidence on June 18, 1991. Thereafter, defendant filed a combined Motion for Discovery, Bill of Particulars and Motion for Production on July 2, 1991. In lieu of formal discovery, the State responded to defendant's motion by enclosing a copy of the entire file in its possession.
Trial was then set for November 3, 1992. The case did not go to trial on this date but was instead passed. On January 5, 1993, the matter was again set for trial but defense counsel made an oral request for a continuance because a witness critical to the defense was not present nor served. Defendant's motion was opposed by the State but was granted by the court. The matter was next scheduled for June 28, 1993, at which time defense counsel filed a Motion to Quash on the grounds that more than two years had elapsed since the time of the filing of the charges and the trial of the matter, and therefore under the provisions of La.Code Crim.P. art. 578(2) the matter was prescribed and the charges should be dropped. After oral argument, the court denied the defendant's motion. Trial did not begin on this date but was placed on the next felony docket, July 26, 1993, with actual trial beginning on July 27, 1993.
According to the time limitations set forth in La.Code Crim.P. art. 578(2), the State had two years from May 14, 1991, within which to bring the defendant to trial. Furthermore, La.Code Crim.P. art. 580 provides for suspension of that prescriptive period when a defendant files a Motion to Quash or another preliminary plea. The period is suspended until the ruling of the court, but in no case shall the State have less than one year after the ruling to commence trial. State v. Watkins, 594 So.2d 501 (La.App. 5th Cir.), writ denied, 600 So.2d 654 (La.1992). In the present case, the defense filed discovery motions, including a Motion for Bill of Particulars, which suspended the running of the time limitations for some three months between July 2, 1991 and October 2, 1991, when the State filed its answers. Additionally, the defendant also made an oral motion to continue on January 5, 1993, due to the absence of a material witness.
Generally, a Motion for Continuance filed by a defendant is a preliminary plea which suspends the running of the prescriptive period. Defendant in brief, however, urges that an oral motion to continue cannot *864 suspend the prescriptive period set forth in art. 578 since the language of La.Code Crim.P. art. 707 mandates that motions for continuance be in writing:
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice
Furthermore La.Code Crim.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
In State v. Washington, 407 So.2d 1138 (La.1982), the Louisiana Supreme Court, citing State v. Parsley, 369 So.2d 1292 (La. 1979), recognized that although art. 707 provides that a Motion for Continuance shall be in writing, where the occurrences that allegedly made the continuance necessary arose unexpectedly, and defense had no opportunity to prepare a written motion, then the trial judge's denial of defendant's motion for a continuance is properly before the court for review. The court in declaring that an oral motion brought about through unexpected circumstances is subject to review implies that these oral motions have some validity even in spite of the language set forth in art. 707.
Suffice it to say the trial court found the defense presented sufficient reasons to grant the defendant's motion to continue even in spite of the fact that it was oral and not written. The decision to grant a continuance is placed in the discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. Gordy, 380 So.2d 1347 (La.1980). To now allow the defendant to make use of his own oral motion to continue, which incidentally was opposed on the record by the State, to allege a prejudicial delay in the start of trial is absurd. The defendant cannot now capitalize on his own request. Therefore, we find the trial court correctly denied the defendant's motion to quash. The State had no less than one year from the January 5, 1993 oral motion to continue, that being January 5, 1994, to bring this matter to trial. Since defendant's trial began on July 27, 1993, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant next argues the trial court erred in allowing Dr. Benoit to testify since the custodian of records was not furnished with an affidavit that the subpoena had also been served upon the defendant or his counsel of record within ten days before the records were to be disclosed, in violation of section (F)(1) of La.R.S. 13:3734 which provides:
In addition to any other provision of law permitting the subpoena of health care provider records, a party may obtain the health care provider records and communications defined by Paragraph (5) of Subsection A of a patient to the extent permitted by Paragraph (6) of Subsection C pursuant to a lawful subpoena, summons, or court order served upon the custodian of records of the health care provider, only if the custodian of records is furnished by the person requesting the subpoena, summons, or court order with an affidavit that such subpoena, summons, or court order has also been personally served upon the patient, or upon his counsel of record, whose records are sought at least ten days prior to the date on which the records are to be disclosed, and the custodian of records for the health care provider has not received notice that the patient has taken appropriate legal action to restrain the release of the records.
Defendant argues the whole intent and purpose of this statute is to allow a patient the opportunity to be placed on notice that his *865 health care records are being sought in order to give him the opportunity to object to their disclosure. We find in this situation no valid objection could have been made. La.Code Evid. art. 510(C)(1), which sets forth the general rule of privilege in criminal proceedings, provides that in a criminal proceeding a patient has a privilege to refuse to disclose and prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself, his representative, and his physician or psychotherapist, and their representatives. However, section (C)(2)(f) of art. 510 mandates there is no such privilege under this article as to a communication when the communication is relevant to an investigation of or prosecution for child abuse. Additionally, defense counsel was provided with a copy of Dr. Benoit's report in response to their discovery motion. Hence, there was no surprise, and the defendant can show no prejudice. Moreover, although La.R.S. 15:476 dealing with privileged communications has since been repealed it was in effect at the time of the offense and therefore it and all interpretive jurisprudence is applicable. State v. Bellard, 533 So.2d 961 (La.1988), rehearing denied, dealt with La.R.S. 15:476 and La.R.S. 14:403. In Bellard the Louisiana Supreme Court determined that there was a waiver of privilege in prosecutions for molestation of a juvenile under La.R.S. 14:403(B) which provides:
B. In any proceeding concerning the abuse or neglect or sexual abuse of a child or the cause of such condition, evidence may not be excluded on any ground of privilege, except in the case of communications between an attorney and his client or between a priest, rabbi, duly ordained minister or Christian Science practitioner and his communicant.
Even assuming there was a technical error in not giving the custodian of records notice ten days before their disclosure, the defendant suffered no prejudice especially in light of the fact that he admitted to having access to Dr. Benoit's report through discovery. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
Defendant next argues the trial court erred in allowing Dr. Benoit to testify as to the guilt or innocence of the defendant in violation of La.Code Evid. art. 704.
Defendant asserts that when Dr. Benoit gave his diagnostic impression of the defendant, as a pedophile, opposite sex, limited to sex of the non-exclusive type, he in essence gave his opinion that defendant was of the nature to commit the crime of incest on his young daughter. Defendant argues that by allowing Dr. Benoit to testify concerning his impression of the defendant this was tantamount to allowing Dr. Benoit to give his opinion as to the ultimate issue in the case.
At trial, Dr. Benoit, who was accepted as an expert in the field of psychology, testified that he conducted a battery of objective tests on the defendant. Additionally, Dr. Benoit related the subjective factors he found pertinent in reaching his diagnosis. Dr. Benoit testified that during his interview the defendant told him that he had been accused of molesting his daughter but denied the allegations. However, Dr. Benoit stated the defendant told him that he had engaged in activities which included contact with his daughter's genitals in ways that Dr. Benoit considered to be quite inappropriate. The defendant told Dr. Benoit he trimmed his daughter's pubic hair at her request because she was unwilling to allow her aunt to help her with the problem. He further stated that when trimming her pubic hair he noticed that her genital area was not clean, and admitted to parting her labia in order to inspect her genital area and then told her to bathe. The defendant claimed that when he observed that Amy could not properly clean herself he admitted to washing her vagina with a washcloth in order to demonstrate the proper method of doing so.
Dr. Benoit testified that in relaying this information the defendant seemed to be unaware that his behavior was inappropriate indicating to Dr. Benoit at the very least that *866 defendant's judgment was inadequate. Dr. Benoit also noted that the defendant admitted that he was sexually abused at the age of six by his older brother's friend.
Dr. Benoit testified that as a result of the objective battery of tests as well as the subjective history gleaned from the defendant, he was able to form an opinion of the defendant's behavioral profile which led to his final diagnostic impression of the defendant as a "pedophilia, sexual contact with a child, opposite sex, limited to incest of the non-exclusive type."
La.Code Evid. art. 704 provides:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
In State v. Dawson, 392 So.2d 445 (La.1980), rehearing denied (1981), the Louisiana Supreme Court citing State v. Mallett, 357 So.2d 1105 (La.1978), noted that given the proper foundation, an expert witness might state whether a defendant has the psychological capacity to commit a particular crime. The following colloquy that took place during the defense's cross examination of Dr. Benoit clearly shows that he gave his opinion on defendant's psychological capacity to commit child abuse:
Q. And, Doctor, again, I believe when Mr. Broussard asked you for an opinion, you indicated that the potential was there, correct?
A. Yes.
Q. And that's all you're really testifying is that there's potential?
A. That's right. These psychological tests cannot determine an individual's guilt or innocence or cannot peer into Mr. Fanguy's past and see what he specifically did or did not do. These tests can be used to compare to the test results of other individuals who have admitted to child sexual abuse, and the personality characteristics derived from this can be compared to the personality characteristics typically found in perpetrators of sexual abuse, but they cannot be used to determine guilt or innocence.
Thus, the jury was clearly informed that Dr. Benoit was not giving his opinion about the defendant's guilt or innocence. We find Dr. Benoit's testimony was not an expression of his opinion on the guilt of the accused but rather a permissible opinion under La.Code Evid. art. 704. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant next argues the trial court, improperly relying on the exception contained in La.Code Evid. art. 510(C)(2)(f), allowed Dr. Benoit to testify in violation of defendant's physician/patient privilege contained in La.Code Evid. art. 510(C)(1). In essence, defendant complains that the exception made for child abuse should not apply to the defendant who was charged under La.R.S. 14:78 with incest.
Although defendant was charged with incest, this case clearly involved the abuse of a child, the only difference being that this child happened to be the thirteen year old daughter of the defendant. Therefore, the exception contained in La.Code Evid. art. 510(C)(2)(f) is clearly applicable to the instant case. This assignment of error is therefore meritless.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error the defendant argues the trial court erred in allowing Susie Breedwell to testify concerning statements related to her by the victim, Amy Fanguy, since she was not the first, but rather the second, person Amy spoke to about this matter.
Defendant argues this testimony was inadmissible hearsay under La.Code Evid. art. 801(C) which did not fall under art. 801(D)(1)(d) defining a statement as non-hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... [c]onsistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
*867 Defendant recounts in brief that Amy first told her story while visiting Susie Breedwell, her father's ex-wife, in Jonesboro, Louisiana. However, it was not Ms. Breedwell that Amy first confided in but rather Ms. Breedwell's sister, Patricia Naset.
During trial Ms. Naset described what Amy had told her about her father's actions as follows. Ms. Naset testified Amy told her the defendant had checked her for bumps, that he had clipped her pubic hair and that the defendant's finger hurt her. Ms. Naset testified that upon hearing Amy's allegations she became upset and therefore called Ms. Breedwell, who was at work, to listen to Amy's complaints. Ms. Naset further testified that at no point during their conversation did Amy tell her that the defendant had sexual intercourse with her but instead told Ms. Naset it was his finger that hurt her. Amy also told Ms. Naset it had happened more than once.
Immediately following Ms. Naset's testimony, the State called Bonnie Sue Breedwell to testify and asked her whether Amy had related any incidents that may have occurred between her and the defendant. At that point, the defense objected to this testimony on the basis that it constituted inadmissible hearsay. The defense reasoned that the only exception the code makes relates to the initial complaint and since Ms. Naset had already testified concerning Amy's allegation, any other person Amy may have discussed the matter with after Ms. Naset could not testify concerning these incidents.
The State countered the defendant's objection, alleging that Amy told Ms. Naset about only one incident and thereafter told Ms. Breedwell about other incidents, thereby insinuating that the recounting of other incidents to Ms. Breedwell would constitute initial complaints also.
The court thereafter overruled the defendant's objection but allowed the defense to respond whereupon the defense recounted Ms. Naset's earlier testimony in which she stated that Amy told her there were other instances. The defense then reurged that under art. 801(D)(1)(d) only the testimony of the first person Amy complained to would be considered non-hearsay. The court again overruled the defendant's objection, finding this constituted an initial complaint.
After the defendant's objection, the State rephrased its question requesting that Ms. Breedwell recount any statements made by Amy concerning possible sexual intercourse with the defendant with the exception of the first occurrence. Ms. Breedwell stated that Amy informed her that on several occasions the defendant had her go into the bedroom and lay on the bed, that he hurt her and that when she told him it hurt he said he was sorry and that it would not happen again; Amy also told her this had happened up to twelve times; Amy told her the defendant said he was checking for bumps, cutting her pubic hair and that something went inside of her and hurt her; and Amy told her about several specific instances of sexual intercourse that occurred between her and the defendant.
The defendant was charged with four counts of incest. Therefore, the victim may well have been complaining of separate incidents to both Ms. Naset and Ms. Breedwell. Therefore, their testimony could be interpreted as admissible under the initial complaint exception of art. 801(D)(1)(d). However, after reviewing the testimonies of both Ms. Naset and Ms. Breedwell, there is no clear cut distinction among the incidents. Therefore, the testimony of Ms. Breedwell may well have been inadmissible hearsay. However, even assuming arguendo this is so, we find this does not constitute reversible error. The victim also testified and related the same information, i.e., that the defendant had sexual intercourse with her on numerous occasions, checked her for bumps, and clipped her pubic hair. It is well settled that the testimony of the victim is sufficient to establish any and all elements of the crime of rape. State v. Rives, 407 So.2d 1195 (La. 1981); State v. Hebert, 443 So.2d 620 (La. App. 3d Cir.1983). The same should hold true in cases of incest as presented here. Therefore, given the testimony of the victim as well as Ms. Naset, the testimony of Ms. Breedwell was merely cumulative in light of *868 all of the other properly admitted evidence and therefore, any error in admitting this testimony was harmless beyond a reasonable doubt. La.Code Crim.P. art. 921. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
Defendant next argues that during his rebuttal argument, the district attorney improperly referred to Father Gilbert Gauthé, a convicted child molester from Vermilion Parish, Louisiana. Defendant alleges this reference appealed to the prejudice of the jurors and violated La.Code Crim.P. art. 774 which states:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
During his rebuttal argument the district attorney stated:
Mr. Melebeck also said, why did Amy not tell her mother, Ms. Maddox, when she went to visit her in late December and early January, why didn't she tell her what her father was doing to her. Well, I'm sure you're all familiar with Father Gauthier and what he did to those young boys. Those young boys
At that point the defense attorney, Mr. Melebeck, objected and the trial judge sustained the objection. The defense attorney also requested that an admonition be given instructing the jury to disregard the remark. The trial judge complied with this request and instructed the jury to disregard the last remark.
Defendant argues that since this case involved an issue similar to that found in the Gauthé case and went far beyond the scope of either the testimony at trial or the defense's closing remarks, it was totally improper. Defendant also asserts that although he asked for and received an admonition from the judge informing the jury to disregard the remark, the admonition was not sufficient and contributed to the verdict.
The State, on the other hand, alleges this was not an appeal to the jurors' sympathies but rather an attempt to show that youthful victims of sexual abuse rarely report such incidents. The State urges that defense counsel knows, contrary to what he would have this court believe, that the reference to Father Gauthé was intended only to rebut the defendant's suggestion in closing argument that if the victim were sexually assaulted, she would have reported it immediately. The State notes this is consistent with the language of La.Code Crim.P. art 774 which provides that the State's rebuttal shall be confined to answering the argument of the defendant.
It is possible that the State might have been answering the defendant's argument by mentioning Father Gauthé. However, this cannot be verified as the prosecutor was cut off in mid-sentence by the defense objection which was thereafter sustained by the trial judge. In the present case, the defense specifically requested that an admonition be given to the jury to disregard the remark and the trial judge complied. We find this admonition cured any possible error that may have been caused by the prosecutor's mention of Father Gauthé. Moreover, a jury verdict of guilty will not be reversed due to an improper closing argument unless it can be shown that the prejudicial remark so inflamed the jury that the remark influenced the jury and contributed to the verdict of guilty. State v. Williams, 447 So.2d 495, 500 (La.App. 3d Cir.), writ denied, 450 So.2d 969 (La.1984). There is no showing that the mere reference to Father Gauthé so inflamed the jury that it influenced the jury's verdict, especially in light of the overwhelming evidence against the defendant. This assignment of error lacks merit.

ASSIGNMENT OF ERROR No. 7
Defendant next argues the trial court erred in allowing Dr. James Moncrief, a pediatric *869 physician, to testify as an expert in the field of gynecology.
At trial, Dr. Moncrief testified that he had been employed as an examiner for the Lincoln Parish Department of Human Services for cases of sexual abuse for the past ten or so years. Dr. Moncrief also testified that he had been qualified and testified in courts in the State of Louisiana as an expert in sexual abuse cases on three prior occasions. Dr. Moncrief stated that in well over one hundred cases he had performed gynecological examinations on female children for the Department of Social Services to determine whether they had been sexually abused. Additionally, Dr. Moncrief confirmed that he had taken continuing education courses which included courses on the sexual abuse of minor children. We find the trial court did not abuse its discretion in qualifying Dr. Moncrief as a credible expert in the present case. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 8
By this assignment of error, defendant alleges his conviction was contrary to the law and evidence since the State failed to prove every element of the crime of incest beyond a reasonable doubt.
In essence, the defense argues that since Amy Fanguy was unsure whether her father had inserted his finger or his penis into her vagina at the time of the crime, the State was unable to prove beyond a reasonable doubt that it was in fact his penis that penetrated Amy. Therefore, the defense alleges the State failed to prove an act of sexual intercourse which in turn means that the State failed to sufficiently set forth the essential elements of the crime of incest.
The crime of incest is defined in La.R.S. 14:78 as: ...
... marriage to, or sexual intercourse with, any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
At trial, Amy testified that the defendant had sexual intercourse with her. She further testified that she saw the defendant pull up his pants after she told him he was hurting her and that when she felt something go inside of her vagina, she saw that the defendant had one hand on her stomach and one hand on her leg. Amy also testified that after her father left the room she noticed that there was blood everywhere and that "some white kind of stuff; come or something" was on her stomach, legs and in between her leg area. Amy also recalled that about two weeks after this incident her father again had sex with her. Amy testified that he told her to go into his bedroom, and he pulled her off of the bed and went from standing up into a squatting position and had sex with her. Amy stated she told the defendant he was hurting her and he said he was sorry and got up and walked out. Amy testified that the defendant also had sex with her on another occasion in early January of 1991. She stated the defendant came into the bathroom with her and told her to lay down on his bed and again had sex with her. Amy also testified that on January 30, 1991, the defendant took her into his bedroom, pulled her halfway off of the bed and had sex with her again.
*870 Moreover, Dr. Moncrief's testimony that Amy had experienced sexual intercourse on at least several occasions and that there was evidence of sexual abuse and that the last occasion of sexual intercourse would have been approximately two weeks prior to his February 11, 1991 examination was consistent with Amy's testimony that the last time defendant had sex with her was on January 30, 1991.
After viewing the evidence, both direct and circumstantial, in a light most favorable to the State, we find sufficient evidence was presented to convince a rational trier of fact beyond a reasonable doubt of defendant's guilt. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.