STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-431

STATE OF LOUISIANA

VERSUS

TIMOTHY A. BRANNON

**********
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-428-2005
HONORABLE STUART S. KAY  JR., DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Hon. David W. Burton**
**District Attorney - 36th JDC**
**Richard F. Blankenship**
**Asst. District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**Counsel for Plaintiff/Appellee:**
     **State of Louisiana**

**Laura M. Pavy**
**Louisiana Appellate Project**
**P. O. Box 750602**
**New Orleans, LA 70175-0602**
**(504) 833-2910**
**Counsel for Defendant/Appellant:**
        **Timothy A. Brannon**

**Timothy A. Brannon**
**Elayn Hunt Correctional Center, Fox 5C**
**Highway 74**
**St. Gabriel, LA 70776**
**In Proper Person:**
        **Timothy A. Brannon**

GREMILLION, Judge.

In this case, the defendant, Timothy A. Brannon, was found guilty of four counts of sexual battery, violations of La.R.S. 14:43.1, and eight counts of molestation of a juvenile, violations of La.R.S. 14:81.2. He was sentenced to seven years imprisonment at hard labor without the benefit of parole on each of the four convictions for sexual battery and twelve years imprisonment at hard labor on each of the convictions for molestation of a juvenile. All of the sentences were ordered to be served concurrently. Defendant has timely appealed claiming that the trial court committed reversible error by allowing an expert to testify that in her opinion, appellant was likely guilty of the offenses alleged, and that his sentence was excessive. He also asserted ten pro se assignments of error. For the following reasons, we affirm.

## FACTS

Defendant was a school teacher at Pineville Elementary School in DeRidder, Louisiana. The record reflects that between November 2004 and April 2005, he committed acts of molestation of a juvenile and acts of sexual battery by touching several female students on their genitals, both over and under their clothing, and by forcing some of the victims to touch his penis, both over and under his clothing. The victims were between the ages of nine and eleven-years-old at the time of the occurrences. Defendant was in his early thirties.

## ERROR PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find there is

one possible error patent which we shall address, but find it does not require us to vacate the sentence.

We will consider whether the trial court committed error in sentencing Defendant the same day it denied his "Motion for New Trial, Motion for Judgment of Acquittal and Memorandum in Support Thereof." Louisiana Code of Criminal Procedure Article 873 requires a delay of twenty-four hours after the denial of a motion for new trial unless the defendant expressly waives the delay or pleads guilty.

We have consistently held that an express waiver occurs when defense counsel responds affirmatively when the trial court asks if he is ready for sentencing. *See State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-0578 (La. 1/31/03), 836 So.2d 59; *State v. Marcotte*, 01-1586 (La.App. 3 Cir. 5/15/02), 817 So.2d 1245, *writ denied*, 02-1687 (La. 2/7/03), 836 So.2d 96.

In the instant case, the trial court denied the Motion for New Trial and Judgment of Acquittal and proceeded immediately with sentencing. It did not question the parties as to whether they were ready to proceed with the sentencing, and it did not ask Defendant if he wanted to waive the twenty-four-hour delay provided for in Article 873. After denying the motion, the trial court stated in pertinent part: "The record should reflect that Mr. Brannon is present in Court with counsel, and we are ready to proceed." The trial court then immediately imposed the sentence, and set forth the reasons for the sentences imposed. Therefore, Defendant did not expressly waive the delay in sentencing.

In the absence of an express waiver, we have found an implied waiver in certain circumstances. *State v. Giles*, 04-359, pp. 27-29 (La.App. 3 Cir. 10/6/04),

2

884 So.2d 1233, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62, was such as case

where we found an implied waiver of the Article 873 delay. We noted:

> Defense counsel voiced no objection when sentencing was taken up immediately after the denial of the motion for post verdict judgment of acquittal and the motion for new trial. After arguments were presented by the State, defense counsel argued in support of a lenient sentence, filing letters submitted on Defendant's behalf and citing to the contents of one letter in particular. Defense counsel also referred to the sentencing range and the period of time already spent in jail by the Defendant. Although the entire sentence could be imposed without benefit of parole, probation or suspension of sentence, defense counsel argued that only the minimum (two years) should be imposed without these benefits.

*Id.* at 1251. We then wrote:

> In *State v. Taves*, 02-709 (La.App. 3 Cir. 1/15/03), 846 So.2d 1, *affirmed in part, reversed in part on other grounds*, 03-0518 (La.12/3/03), 861 So.2d 144, this court found a waiver of the twenty-four-hour delay, noting that defense counsel failed to voice an objection even though he was clearly aware that the sentencing was scheduled to be taken up the same day the motion for new trial would be heard. Additionally, we noted that after the trial court denied the motion for new trial and told the defendant to come up for sentencing, defense counsel declared his intent to present evidence at the hearing. In addition to presenting evidence, defense counsel argued for a suspended sentence and stated he had reviewed the PSI and discussed it with the defendant. Finally, this court noted that defense counsel did not raise as error the trial court's failure to delay sentencing and did not allege prejudice. Although this court found an implied waiver of the article 873 delay, we found the sentences imposed were excessive and remanded for resentencing. In response to the State's application for review, the supreme court reversed this court's finding of excessiveness and reinstated the sentences without any mention of the trial court's failure to abide by the delay required by La.Code Crim.P. art. 873. (*See also State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, *writ denied*, 00-2950 (La.9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002), for a thorough discussion of the jurisprudence regarding express and implied waivers of the twenty-four-hour delay period required by La.Code Crim.P. art. 873.)

> The present case is similar to *Taves* in that the record contains no colloquy between the trial court and the Defense regarding its readiness

for sentencing. However, as in *Taves*, defense counsel presented arguments to the trial court in support of a lenient sentence and the trial court supported the sentence imposed with ample reasons. Unlike the defense counsel in *Taves*, the defense counsel in the present case did not present evidence at the sentencing hearing. Additionally, the record in the present case is not as clear as the record in *Taves* as to defense counsel's knowledge that sentence would be imposed immediately after the disposition of his motion for new trial and motion for post-verdict judgment of acquittal. However, Defendant here makes no claim of prejudice because of the failure to abide by the delay. Considering these facts, we find *Taves* analogous and find an implied waiver occurred in the present case.

*Id.* at 1251-52.

We find the instant case similar to both *Giles* and *Taves*. The minute entry on September 28, 2006, indicates that after the verdict was rendered, the trial court ordered a Pre-Sentencing Investigation and set the sentencing hearing for November 9, 2006. Defendant filed the motion for new trial the day before the sentencing hearing was set, November 8, 2006. After denial of the motion for new trial and the trial court advising it was ready to proceed to sentencing, Defendant did not request a continuance of the sentencing, and he did not object to proceeding with the sentencing. Defendant presented no evidence at the sentencing hearing. While the trial court set forth its reasons for imposing sentencing, which was set forth in written reasons, Defendant interrupted and requested that it not read the next part of the written reasons because it was based upon evidence not proven at trial. Defendant then objected when the trial court continued. When the trial court concluded its reasons for imposing sentence, Defendant objected to the sentences. In his brief to this court, Defendant does not assign the trial court's failure to delay sentencing as error nor does he allege any prejudice. On appeal, he simply states that the trial court sentenced him without any waivers of the sentencing delays and only challenges his

4

sentences as excessive.

As in *Giles* and *Taves*, the record contains no colloquy between the trial court and Defendant to determine his readiness for sentencing. Similarly, as in *Giles,* Defendant presented no evidence and makes no claim that he was prejudiced because he was not granted the statutory twenty-four hour delay. Accordingly, we find this case analogous to both *Giles* and *Taves* and find that an implied waiver occurred.

## EXPERT WITNESS TESTIMONY

In his first assignment of error, Defendant argues that the trial court erred when it allowed the State's expert witness to testify as to his guilt. He claims that the expert's statements impermissibly bolstered the State's case by advising the jury that there was a significant likelihood he acted in a sexually inappropriate manner with children, and that the expert told the jury to expect Defendant to falsely deny his guilt. Defendant further alleges that the trial court did not perform its gate-keeping function in compliance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), and *State v. Foret*, 628 So.2d 1116 (La.1993).

On the eve of trial, Defendant filed motion in limine. Among other claims, he challenged the scientific grounds upon which the State's psychological expert, Dr. Maureen Brennan, was expected to testify that the "statistical probabilities that an individual possessing the same scores on the same testing instruments as the Defendant herein, would engage in acts in conformity with his 'perceived' predispositions." At the hearing on the motion, when the subject of the scientific methodology came up, the trial court noted that Defendant did not file a motion for a *Daubert* hearing. The trial court then advised Defendant, "[w]e will deal with that

5

at the time the experts are qualified and make a determination of whether or not it is junk science or not at that point, since nobody has filed a motion for a *Daubert* hearing."

On the morning trial commenced, the State opposed Defendant's motion in limine by arguing that in *State v. Fanguy*, 94-143 (La.App. 3 Cir. 10/5/94), 643 So.2d 860, *writ denied,* 94-2726 (La. 4/21/95), 653 So.2d 563, under similar circumstances as the present case, this court held that a qualified expert could testify as to a defendant's predisposition to commit the crime alleged. The State asserted that the expert in *Fanguy* was the associate of Dr. Brennan, and used the same battery of tests that Dr. Brennan used in the current case on which to base his opinions.

The role of an expert witness in criminal matters involving sexual abuse of children has been well defined:

> The purpose of an expert witness in a criminal case is to provide the jurors with a basis of knowledge and background information on a subject. The jury as the ultimate fact finder should relate background knowledge received from the expert to the facts established by the evidence at trial, and make a determination of the defendant's guilt. *State v. Soler*, 93-1042, p. 11 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1080, *writ denied*, 94-1361 (La.11/4/94), 644 So.2d 1055.

> La. C.E. art. 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. La. C.E. art. 704 provides:

> > Testimony in the form of an opinion or inference other-wise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

*State v. Myles,* 04-434, p. 10 (La.App. 5 Cir. 10/12/04), 887 So.2d 118, 125.

6

At trial, Dr. Brennan, a clinical psychologist, was the first witness for the State to testify. She stated that she had conducted psychometric testing of Defendant. After she offered her qualifications, the State tendered her as an expert in the area of characteristics of victims of child sexual abuse, as well as their perpetrators, and of the testing of perpetrators of sexual abuse or possible perpetrators of sexual abuse. Following Defendant's traversal examination, the trial court accepted Dr. Brennan "as an expert in the field of clinical psychology with special training and expertise in identifying the characteristics and the diagnosis of child sexual abuse victims and of perpetrators." The trial court further clarified its ruling by saying, "That is what I said. I said, 'Characteristics of and diagnosis of child sexual abuse and perpetrators.'" Defendant's objection to Dr. Brennan's testimony at this time was, "That subset of expertise predicting behavior patterns of those who perpetrate child abuse is not a relevant area in this context. And therefore, her expertise or qualifications are not relevant. Therefore, I object to her being qualified to that information from her to predict conduct, cannot predict conduct."

The trial court then stated:

She is being offered to describe what testing data may have shown insofar as that and whether or not that conduct followed or was committed by any person, who is going to be a subject of this trial is for the jury to decide.

She is only going to talk about test results and how she as an expert is qualified to interpret those. I think it has been very clear from her testimony that she, with her license as a clinical psychologist is capable of administering the test, analyzing them, and making conclusions based upon them. That is the basis for her certification.

Defendant responded that his concern was that as an expert witness, Dr. Brennan not delve into character evidence.

7

### *Daubert* Hearing

Defendant argues that it was reversible error to permit Dr. Brennan to testify to the Abel Sexual Interest Assessment test results which showed that there was an eighty-one percent chance that he acted out sexually with children and that he should be expected to falsely deny that fact. Defendant claims that the trial court erred in denying his Motion in Limine, and failed in its *Daubert* gatekeeping function by improperly permitting the jury to hear and consider Dr. Brennan's testimony.

> In *State v. Foret,* 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La.5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert,* 509 U.S. at 592-594, 113 S.Ct. 2786. In *Foret*, supra, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. *Id.* Thus, Louisiana has adopted *Daubert's* requirement that in order for technical or scientific expert testimony to be admissible under La. C.E. Art. 702, the scientific evidence must rise to a threshold level of reliability. *Daubert's* general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999)*; Independent Fire Ins. Co. v. Sunbeam Corp.,* 99-2181 (La.2/29/00), 755 So.2d 226. The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id.* Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho, supra* at 526 U.S. 142, 119 S.Ct. 1167.

*State v. Allen,* 41,548, pp. 11-13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254-55.

At the outset, we note that the trial court did not deny that portion of the motion in limine which pertained to the issue of the validity of the scientific basis for Dr. Brennan's testimony. As noted above, the trial court left open the opportunity for Defendant to raise the issue at trial when Dr. Brennan began testifying.

During trial, Dr. Brennan's testimony, Defendant objected to the fact that she had never interviewed the victims involved. However, we note that Defendant does not raise this objection on appeal and we cannot now review that as error. Defendant also objected at trial to the doctor's testimony regarding some conclusions of the Rorschach test which was one of the tests she administered to him. Defendant asserted that there was no finding in Louisiana jurisprudence that the Rorschach test was admissible for the purpose of predicting conduct. The trial court responded that under *Fanguy*, "the witness has the right to express her opinion as to his psychological capacity, to respond in certain ways as a basis of objective testing after the foundation has been laid that the testing was done." Again, Defendant does not raise this objection on appeal and we cannot consider this as an assignment of error.

We further note that Defendant never objected at trial to testimony concerning the results imparted by the Abel Sexual Interest Assessment or to the scientific basis for the test, despite conducting a lengthy cross-examination of Dr. Brennan on that subject. His sole objections at trial were as discussed above. Accordingly, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841(4); *State v. Loyden*, 04-1558 (La.App. 3 Cir. 4/6/05), 899 So.2d 166.

9

Finally, even though Defendant argues that the Abel Sexual Interest Assessment is scientifically invalid, in *United States v. Robinson*, 94 F.Supp 2d 751 (W.D.La. 4/18/00), the United States District Court for the Western District of Louisiana specifically addressed that test and found the test satisfied all four factors of the *Daubert* analysis.

For these reasons, we find no error in the trial court's failure to hold a *Daubert* hearing concerning the issue of the validity of the principles and methodology of the Abel Sexual Interest Assessment test prior to Dr. Brernnan's testimony. A trial court/gatekeeper's function is to focus solely on the principles or methodology and not the conclusions that are generated therefrom. *See Daubert,* 509 U.S. 579, 113 S.Ct. 2786. Since there was no motion for a *Daubert* hearing when Dr. Brennan testified, a *Daubert* hearing was never held and no objection was made to preserve the alleged error. Accordingly, we have no basis to find that the trial court abused its discretion by denying Defendant's motion in limine to exclude Dr. Brennan's testimony.

**Louisiana Code of Evidence Article 704**

Defendant next argues that Dr. Brennan's statements impermissibly commented on Defendant's guilt or innocence. Louisiana Code of Evidence Article 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

10

The record shows that Dr. Brennan described the three tests she administered to Defendant, the testing process, the purpose of the tests, and the results of the tests. The third test was the Abel Sexual Interest Assessment. While discussing this test, Doctor Brennan stated as follows:

> Q. When you look--is one of the parts of the Abel Sexual Interest Assessment, deniability? That is you look to see if the person is a denier or not a denier?

> A. One area is in terms of defensiveness. That came out with him being very, very defensive. There is a probability value of that--it is called a "probability value." That is taken by comparing his individual's responses to the entire test. Both the slides and the written test.

> In comparing those to those things that appear in the response patterns of individuals who have acknowledged acting out previously with children versus those normals who have never acted out. So that little window there of things that are fairly unique.

> And all this says is that they're depending on how much similarity there is there. That there is a certain percentage probability that some point in their life they have acted out in a way that involves some sort of sexual interaction with a child.

> Now, it doesn't say whether that happened when they were 13 or 33, whether it was male or female, whether it was 2 years old or 16 years old. It just says that there is a certain probability just in terms--that say 20 percent of the people who have this much overlap have at some point in time acted out or 40 percent or 80 percent.

> Q. And what was his?

> A. His was in the 81 percent. Which says there is an 81 percent chance that anyone with that pattern has at some point in their life been sexually inappropriate with a child. Maybe as a teenager, maybe as an adult.

Dr. Brennan further testified that the "[Abel Sexual Interest Assessment] is simply saying that [Defendant's] responses to this test have a significant overlap with individuals who have acted out at some point in the past and denied it."

11

The trial court relied on *Fanguy*, 643 So.2d 860, in determining that a qualified expert could testify as to an accused's predisposition to commit the crime alleged. Fanguy was convicted of incest. The expert witness, a psychologist, testified that he administered a battery of objective tests on the accused and stated that, "he was able to form an opinion of the defendant's *behavioral profile* which led to his final diagnostic impression of the defendant as a 'pedophilia, sexual contact as a child, opposite sex, limited to incest of the non-exclusive type.'" *Id.* at 866. We held that "given the proper foundation, an expert witness might state whether a defendant has the psychological capacity to commit a particular crime." *Id.* In *Fanguy*, we noted that the jury had been clearly informed by the doctor during trial examination that the tests can only be used "to compare to the test results of other individuals who have admitted to child sexual abuse, and the personality characteristics derived from this can be compared to the personality characteristics typically found in perpetrators of sexual abuse, but they cannot be used to determine guilt or innocence." *Id.* Accordingly, this court determined the doctor did not give an opinion as to the accused's guilt or innocence.

Defendant argues that the trial court erred in its reliance on *Fanguy,* because it is distinguishable from the present case. He claims that in *Fanguy* the accused directly admitted that his behavior with his daughter was grossly inappropriate, and therefore, it was clear that the doctor's opinion that Fanguy was the type of person to engage in such grossly improper behavior was not improper. We disagree with Defendant's interpretation of Fanguy's admission. Although Fanguy admitted activity with his daughter that was deemed by the doctor to be very

12

inappropriate, he denied he was a pedophile and guilty of the offense charged.

Defendant further argues that the ruling of *Fanguy* was not supported by the cases this court cited as applicable, *State v. Dawson,* 392 So.2d 445 (La.1980) and *State v. Mallett,* 357 So.2d 1105 (La.1978), *cert denied,* 439 U.S. 1074, 99 S.Ct. 848 (1979). In *Dawson,* 392 So.2d 445*,* the defendant wanted to elicit testimony from an expert witness that the accused did not have the capacity to obtain sexual gratification through the use of force or violence. The supreme court noted: "Given the proper foundation, an expert witness might state whether a defendant has the psychological capacity to commit a particular crime. *State v. Mallett*, 357 So.2d 1105 (La. 1978). However, the State would then be entitled to cross-examine about the facts upon which the opinion was based." *Id.* at 447.

In *Mallett,* 357 So.2d at 1110, the supreme court found that "insufficient foundation was laid on which to base the witness' opinion as to defendant's capacity to commit the offense of contributing to the delinquency of a juvenile." Accordingly, in *Mallett,* the trial court did not err when it refused to permit the expert witness to testify.

In the present case, Doctor Brennan testified as follows:

Q. -- when you took the results of every one of these aspect, both the self-reported and the objective parts of the Abel Sexual Interest Assessment, that's how they came up with that 81 percent?

A. And I should emphasize, "They." All of this data is sent from my computer to a computer in Atlanta. It's scored statistically and sent back to me. So I don't do any of that manipulation of data myself.

Q. So it's actually an objective test where they have gone and said, okay, we can give you the results. We know the way tens of thousands of actual molesters have responded to these questions; and in contrast, we know how thousands of non-molesters have responded; and

13

then they can look at--

A. And statistically look at the similarity is what they are doing.

Q. And that is how they came up with the 81 percent probability?

A. Right.

Q. Now, that is not to say, that there is an 81 percent probability that he molested the children in this case?

A. Doesn't have anything to do with this case.

Q. It is simply saying that his mental land---or his--

A. It is simply saying that his responses to this test have a significant overlap with individuals who have acted out at some point in the past and denied it.

Accordingly, we hold that Dr. Brennan's comments based on the objective testing were not an expression of her opinion about Defendant's guilt or innocence.

Further, Dr. Brennan's testimony was offset by that of the testimony of Defendant's expert witness, Dr. Marvin Douglass, a certified marriage and family therapist. Dr. Douglass testified that he conducted several sessions with Defendant and administered personality tests to him. He said his findings concerning Defendant were not consistent with any pedophilia or deviant sexual behavior.

Finally, the expert's testimony paled when considered in the light of the State's other witnesses. The jury heard the testimony of eight victims who each described incidences of Defendant inappropriately touching them or forcing them to touch him, as well the testimony from two witnesses who either saw Defendant inappropriately touch a child (excluding the witness who misidentified Defendant), or saw Defendant in a very suggestive situation with a child. Finally, the jury heard

14

testimony regarding Defendant's use of a school computer to access child pornography, and was shown a sample of the images he viewed. The evidence against Defendant was overwhelming and the verdict was not singularly attributable to the testimony of Dr. Brennan. There is no merit to this assignment of error.

## EXCESSIVE SENTENCE

Defendant next asserts that his sentences, which amount to twelve years of imprisonment, are excessive in light of the fact that the sentences are near maximum sentences imposed on a first-time felony offender. Defendant argues that the offenses of which he was convicted "were not one of the more extreme examples one could find of the charged offense."

In *State v. Fontenot*, 06-226, pp. 7-5 (La.App. 3 Cir. 7/12/06), 934 So.2d 935, 940-41 (alteration in original), we stated that the analysis for excessive sentence claims is well-settled and wrote:

> To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling,* 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331.

15

. . . .

Further, in *State v. Whatley,* 03-1275, p. 6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 959, this court stated, "The fifth circuit, in [*State v.*]*Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, [*writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183] stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion: 1. The nature of the crime, 2. The nature and background of the offender, and 3. The sentence imposed for similar crimes by the same court and other courts."

Defendant was convicted of sexual battery and molestation of a juvenile. Louisiana Revised Statutes 14:43.1(C), sexual battery, provides for a range of imprisonment of not more than ten years. Defendant was sentenced to seven years at hard labor without the benefit of parole on four convictions, to be served concurrently. Pursuant to La.R.S. 14:81.2(C), molestation of a juvenile, the range of imprisonment is not less than one year and not more than fifteen years. Defendant was sentenced to twelve years at hard labor on the eight convictions, to be served concurrently, and concurrent with the seven year sentences.

At the sentencing hearing, the trial court noted for the record that it had considered the "numerous letters, comments, and testimony at trial of your friends, which were favorable to you, as well as your age and positive affects that some of your activities have had in the community." The trial court further noted that Defendant was a first-time felony offender. The trial court, however, took notice that the victims in this case had been Defendant's students, and as their teacher, he betrayed their trust, their parents' trust, and his fellow teachers' trust. The trial court opined that sexual abuse of children under this circumstance had serious and far-reaching effects. It stated that since the convictions, there was evidence that Defendant had sent letters to the witnesses and the jurors who rendered the guilty

16

verdicts attempting to convince them of his innocence and that he had taken no responsibility for his actions. The trial court stated that it believed twelve years imprisonment was necessary to protect the public and that anything less depreciated the seriousness of the offenses.

For guidance in our decision we look to other similar cases. In *State v. Elzie,* 37,920 (La.App. 2 Cir. 1/28/04), 865 So.2d 248, *writ denied*, 04-2289 (La. 2/4/05), 893 So.2d 83, the second circuit did not find a twelve and one-half year sentence excessive. The sentence was imposed on one count of molestation of a juvenile, where the abuser was a minister and used his religious position to seduce his minor daughter. In *State v. Hilton*, 99-1239 (La.App. 1 Cir. 3/31/00), 764 So.2d 1027, *writ denied*, 00-0958 (La. 3/9/01), 786 So.2d 113, the defendant was convicted of attempted molestation of a juvenile whom he had supervision and control over. He was sentenced to seven and one-half years imprisonment. Hilton was a first-time felony offender, but he had committed the offenses over a long period of time.

We cannot say that the sentences imposed by the trial court were such that they would shock our sentence of justice, particularly when considering that Defendant held a position of authority over the victims. Moreover, his activity of sexual abuse extended over a period of time and involved several victims. We find that the trial court did not abuse its considerable discretion when it sentenced Defendant. Consequently, this assignment of error lacks merit.

### PRO-SE ASSIGNMENTS OF ERROR

As we pointed out at the beginning of our opinion, Defendant filed ten pro se assignments of error. Like so many other pro se briefs, Defendant has failed

17

to comply with the Louisiana Uniform Rules of Courts of Appeal.  Initially we note

Uniform Rules—Courts of Appeal, Rule 2-12.4, which provides in pertinent part:

> The brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon the issues presented for review, and argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought.
>
> . . . .
>
> The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the is not made.
>
> All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.

By not adhering to the Rules of Court, Defendant makes it difficult if not

impossible to review his assignments of error, but in the interest of justice we shall

do the best we can to consider each of his assignments.  First, we point out that the

record in this case consists of almost four thousand pages, fifteen volumes, plus

supplemental records and exhibits.  In none of his ten assignments of error does

Defendant refer to page numbers in the record where the alleged error was committed,

or where any other material regarding the error may be contained.  In many of his

assignments of error he does not name the witness or juror whose testimony or

position is being challenged.  Likewise, in many of the assignments he does not

indicate if there had been an objection to the alleged error in the trial court so as to

preserve the issue on appeal.  In the few cases he asserts there were objections, he

18

does not state if it was his objection to his defense counsel, or defense counsel's objection to the trial court, what were the grounds for the objection, and the result or ruling by the trial court. Moreover, in many of the assignments of error, Defendant asserts the alleged error and then only states his conclusions without a discussion of the facts and how he was prejudiced by the error. *See State v. Surratt*, 05-1406 (La.App. 3 Cir. 6/7/06), 932 So.2d 736, *writ denied*, 06-2100 (La. 6/1/07), 957 So.2d 165; *Costales v. Turner Indus.,* 05-36 (La.App. 5 Cir. 5/31/05), 905 So.2d 410, *writ denied*, 05-1707 (La. 1/9/06), 918 So.2d 1056; *State v. Boswell,* 96-801 (La.App. 3 Cir. 2/12/97), 689 So.2d 627.

We shall address the pro se assignments of error in the order they were presented and, where possible, address the issues.

**Pro-se Assignment of Error Number 1:**

Defendant asserts that the trial court erred when "in allowing a state witness to be credible, notwithstanding the fact, that said witness identified another person who was different from appellant be tried?" He claims that the trial court permitted the jury to believe that a minor witness was credible in identifying him, that the minor witness was coached, and not allowed to rely on her own independent recollection. Defendant contends in his *pro se* brief that the trial court allowed "a corroborating witness who testified in a heated and high profile court trial wherein the witness was unable to identity the Appellant; over the objection of Appellant the court allowed the jury to receive damaging testimony while clearly knowing all the time this witness erroneously identified someone other than the alleged Appellant." Defendant does not name the witness, whether the witness was a victim or not, or cite

19

to the page number in the record where the alleged misidentification took place.

There was a reference in Defendant's appellate counsel's brief to a witness, Andrew Williams, who testified that when he was fifteen, he saw Defendant and a girl underneath the gym bleachers and Defendant was touching her "butt." When asked to provide an in-court identification of Defendant, the witness pointed to the wrong person. Subsequently, the trial court ordered the testimony stricken and instructed the jury to disregard the testimony because of the misidentification.

We can only presume that this is the witness Defendant is referring to, noting, however, that he refers to the witness as "her." Defendant argues in his brief that "[o]bviously a witness who testifies concerning graphic sexual related matters would not, all of a sudden, forget the identity of the perpetrator. Thus, a witness must be legally competent to testify." There is no indication that any of the victims, who were all females, misidentified Defendant. Finally, the trial court struck the testimony of the witness who misidentified Defendant from the record and admonished the jury to disregard the testimony.

Even when presented in the best light to Defendant, there is no merit to this assignment of error.

**Pro-se Assignment of Error Number 2:**

Defendant asserts in this assignment of error that the trial court committed error "in not finding that a potential juror should have been excluded during the jury selection process after learning that said potential juror had a daughter-in-law working for the court thus creating a question of impartiality? Did the trial court commit manifest error in not dismissing a juror who continued to fall

asleep during crucial testimony in the trial and not replacing him with an alternate."

Once again this assignment cannot be reviewed due to Defendant's failure to comply with Rule 2.12-4. He does not name the persons involved or the page numbers indicating in the record where the alleged error took place. He does not state whether there was an objection to the "potential juror," and if so, where in the record the objection was made. It is not clear from Defendant's assertion whether the "potential juror" even became a member of the seated jury. The allegation of undue influence is not argued.

Defendant further asserts that during the trial proceedings, a juror named Duplechain continued to fall asleep during crucial testimony. In *State v. Cass*, 356 So.2d 396, 398 (La.1978), the supreme court stated:

> Consistent with *State v. Buggage*, [351 So.2d 95 (La. 1977)] and *State v. Rounsavall*, [337 So.2d 190 (La. 1976)] and applying C.Cr. P. Art. 789, we determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had Defendant and the State been afforded an opportunity to explore on the record the Juror's inability to perform on this account, we would be presented with a substantially different question for review.

*See also State v. Tennors,* 05-538 (La.App. 3 Cir. 2/15/06), 923 So.2d 823.

For reasons set forth above, we are unable to review this claim because Defendant points to nothing in the record which could allow this court to determine the merits of this allegation. Accordingly, this assignment lacks merit.

**Pro-se Assignments of Error Number 3 and 4:**

In these two assignments of error, Defendant asserts the trial court erred

21

in not allowing him to introduce exculpatory evidence that a mistrial was granted in federal court on charges of possession of child pornography involving him and the same alleged victims; and refusing to allow him to cross examine and question the truthfulness and character of two of the alleged victims, who he claims made prior inconsistent statements in the federal court proceedings. Defendant asserts that the fact of the mistrial is exculpatory evidence.

Again, Defendant does not name the witnesses or point to the location of the statements or show the inconsistencies in their testimonies during the current trial. Moreover, it does not appear from the record that Defendant ever formally requested to be allowed to use the testimony from the Federal case to impeach the witnesses or that the trial court actually denied a request as such.

In "Defendant's Motion in Limine" he states that he was tried in Federal Court, Western District of Louisiana, Lake Charles Division, on possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The trial resulted in a mistrial. In the motion, Defendant asserted that the State intended to use the same evidence of child pornography that was used in the Federal court as "other crimes evidence," to show a lustful disposition pursuant to La.Code Evid. art. 412.2. He argued that the State should not be permitted to do so. The trial court ruled that the evidence concerning the child pornography was admissible in the current trial. As far as we can tell, Defendant did not appear to object to this ruling.

The trial court also determined that the fact that a mistrial occurred in federal court was not relevant and that information would not go to the jury in the instant case unless it became necessary. The trial court ruled that it would deal with

that issue if either side tried to impeach a witness with the prior recorded testimony from the federal trial.

Defendant does not argue in his pro se brief how the fact of the mistrial constituted exculpatory evidence unless he is referring to the alleged inconsistent statements. However, nothing in either the State's brief or Defendant's appellant counsel's brief indicates whether the issue of inconsistent testimony came before the trial court. As noted, Defendant does not name the witnesses, note objections, if any, or cite to any page numbers where said inconsistencies occurred.

Defendant also claims that the trial court erred by refusing to allow taped interviews of witnesses that would have shown that the witnesses made prior inconsistent statements and committed perjury. This allegation suffers from the same deficiencies as the other allegations above. Therefore, because Defendant has failed to comply with Uniform Rule 2-12.4, we are unable to address these assignments of error, and they are not considered.

**Pro-se Assignment of Error Number 5:**

In this assignment of error, Defendant contends that the trial court also erred in its failure to properly instruct the jury that any sidebar discussions between counsel for the State and Defendant should not be considered in the jury's deliberations. Defendant asserts that the trial court permitted inappropriate behavior by the State which resulted in him being denied a fair trial. He argues that whenever there was a sidebar, the prosecuting attorney was permitted to speak loud enough that the jury could hear the discussion, and thereby "tainted the jury's partiality."

23

Once again, there is no way to address this allegation. The trial record index indicates there were more than one hundred sidebars throughout the trial. There is no way to determine from the record the volume of the prosecutor's voice, or the effect of any overheard remarks on the jury. Defendant does not indicate there was ever an objection made, nor does he specify which sidebar contained inappropriate, loudly made remarks, or in what way the remarks influenced the jury against him. This assignment of error is considered abandoned for failure to comply with Uniform Rule 2-12.4. ____

**Pro-se Assignment of Error Number 6:**

In this assignment of error, Defendant claims the trial court committed error "by delaying the defense's motion to exclude all computer evidence until the State's witness had testified of various child pornography crimes only after said damaging testimony was heard by the jury is when the trial court ruled that such evidence of an illegal search and seizure was inadmissable?" He further claims that the trial court also committed error "in allowing the computer generated pictures to be viewed by the jury; notwithstanding the fact that, this evidence was subsequently ruled by the court to be inadmissible because the search and seizure was illegal to obtain said computer pictures?" As to the first part of this assignment, Defendant asserts the trial court erred when it denied his "pretrial motion to exclude the testimony involving computer generated crimes of pornography; however, upon completion of the pretrial motion the State District Court inappropriately failed to determine whether or not the probative value of computer expert testimony outweighed the prejudiced effect to a jury panel."

24

He further argues:

> While testifying in court, the State witness Carla Smith engaged in numerous, illegal opinionated comments, more particularly this witness suggested to the jury that it was her opinion that the names of the websites on the computer conclusively contained child pornography (although it was never proven what these sites were); nevertheless, the expert for the defense testified that a method called "**caching**" creates access to various pornography sites without users consent or effort to engage.

> After testimony from Carla Smith, testimony that was clearly damaging and inadmissible, the trial judge determined that the testimony was inadmissible only after the jury had heard this prejudicial testimony, therefore causing the jury to form a guilty opinion toward the Appellant.

Defendant fails to properly cite the record and with each assignment of error it get increasingly difficult for us to divine the essence of his claims. A review of Defendant's motion in limine and Carla Smith's testimony at trial indicates Defendant is incorrect regarding the trial court's ruling and on what occurred during Smith's testimony.

Calling to mind Defendant's motion in limine, we note that he stated that the State was intending to introduce other crimes evidence, which consisted of a package of images depicting children in sexual situations retrieved from the hard drive of a school computer which had been checked out by him. In the motion, Defendant argued that the images were more prejudicial than probative and as such were inadmissible pursuant to La.Code Evid. art. 403. Article 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

25

Nowhere in the motion, or at the hearing held on the motion, did Defendant object to the testimony of any of the State's witnesses who testified regarding the school's computer. Furthermore, following arguments regarding the prejudicial effect of the "other crimes" evidence as opposed to their probative value, the trial court specifically found that the probative value outweighed the prejudicial effect and found the evidence to be admissible.

As we have noted, Defendant does not state which remarks Smith made that were "numerous, illegal opinionated comments," nor cites any page numbers. However, we reviewed her testimony. Smith, a computer forensic technician, worked for the Beauregard Parish Sheriff's Office. She examined the laptop computer which had been assigned to Defendant by the school. She testified that in the computer's "favorites," a location where websites could be stored for easy access, she found sites that were "consistent with child pornography sites." Defendant objected to the characterization and, stated that the witness was not qualified to make that determination, moved for a mistrial. The trial court denied the motion for a mistrial, but sustained the objection and admonished the jury that "[s]he is not permitted to state a conclusion about what she saw, only what she saw."

The State then asked the names of the websites in the "favorites." Defendant again objected, stating that names can be deceptively provocative. At this point, the trial court sent the jurors out of the courtroom. After a lengthy argument, the trial court sustained Defendant's objections, ruling that the witness can only testify as to the images "she removed from the computer, identify the dates that they were entered onto the computer, let these be exhibits for identification only."

26

Finally, Defendant further alleged that the witness "testified that a method called '**caching**' creates access to various pornography sites," thereby "causing the jury to form a guilty opinion toward the Appellant." The actual testimony, solicited by Defendant, was as follows:

Q. As part of Internet Explorer, is there an internet history that simply saves the last sites that you went to?

A. Yes. It's called, "caching"; and it actually saves it to your computer.

Q. And so you can look where you went the last few times?

A. Exactly.

Defendant never made an objection, either pre-trial or during trial, to the State's witnesses who testified concerning the computer. The trial court did not rule that her testimony was inadmissible after the jury heard the testimony, and the witness did not state that "caching" created access to pornography sites. Accordingly, there is no merit to this claim.

The second part of this assignment of error, the search and issue, appears to relate to the complaint given in assignment of error number eight which concerns allegedly illegally obtained evidence and that issue will be discussed in that assignment.

**Pro-se Assignment of Error Number 7:**

For his seventh assignment of error, Defendant argues that the trial court erred in not declaring a mistrial on its own motion "after learning that the state had violated appellant's discovery request by not providing said appellant with computer pictures at the time it was being introduced in court." Defendant apparently argues that the State did not produce these pictures pursuant to his discovery request, and the

court should have taken it upon itself to declare a mistrial.

Once again, there is no merit to this argument. There were two sets of computer images submitted into evidence during the trial. State's exhibit 22 was submitted during Smith's testimony.[1] This exhibit was the "other crimes" evidence, the admissibility of which was litigated during the hearing on Defendant's motion in limine. The two pictures that were introduced during rebuttal testimony were taken from the "other crimes" package already admitted into evidence. Defendant did not object the first time these images were introduced at trial, but objected to the two images being introduced during the State's rebuttal. However, the trial court found the images to be relevant for the purpose for which they were introduced. There were never any objections made at trial because the images had not been produced during discovery.

Finally, Defendant argues that "the State further breached its affirmative duty" in failing to disclose its intention to use an important witness, Libby Cline. At trial, when the State called Cline, Defendant questioned whether the witness's name had been provided in discovery. The State replied that she had been disclosed, that she had been called at the beginning of trial, sworn in with the rest of the witnesses, and sequestered. After a brief summary of the witness's testimony, the trial court inquired whether Defendant had any objections. Defense counsel stated: "Well, let me so inform the Court that depending on what she says, I may have to ask the Court for a short recess." Defendant did not further object to the witness as an undisclosed witness.

---

[1] It appears that State's exhibit 22 was misidentified as State's exhibit 21 in the record.

Accordingly, there is no merit to this assignment of error.

**Pro se Assignment of Error Number 8:**

Defendant asserts in this assignment of error that the trial court erred when it permitted evidence taken from a computer seized from a shed behind his house to be introduced at trial. Defendant argues that the search warrant application did not specifically describe any other location other than his house and the school where he was employed in which to search for evidence.

The affidavit for the search warrant specified only Defendant's residence and the school where he was employed as areas to be searched. Sometime prior to trial, Defendant filed a "Motion to Suppress" wherein he asserted the claim of illegally obtained evidence. In the motion, he asserted that he did not give consent to search a shed behind his house where a computer was subsequently found. The State's memorandum in response to Defendant's motion argued that he gave consent for the search of the shed. A hearing on Defendant's motion was held. However, the transcript of the hearing contains only his testimony denying that he gave the officers permission to search his shed, which resulted in the discovery of a computer, and we cannot find any indication in the record before this court that there was a ruling made by the trial court concerning whether the evidence was illegally obtained or not.

Nonetheless, it does not appear from the record that there was any evidence submitted at trial that was obtained from the computer seized from Defendant's shed. Defendant does not state in brief what evidence he is specifically referring to or where the submission of that evidence occurred during trial. All exhibits and testimony submitted by the State at trial that concerned evidence

29

obtained from a computer was obtained from the school's laptop computer, which had been checked out by Defendant for his use. Accordingly, Defendant does not show that any illegally obtained evidence was submitted at trial.

There is no merit to this assignment of error.

**Pro Se Assignment of Error Number 9:**

In this assignment of error, Defendant asserts that the trial court erred "in refusing to allow defense expert witness Dr. Richard Austin to provide his expert opinion; notwithstanding the fact that, Dr. Richard Austin had been qualified by the district court to be an expert in the field of sex related crimes? Whether the trial court commited [sic] error in its failure to allow appellant to introduce Dr. Richard Austin's written report with regards to his findings, conclusions, and expert opinion?"

There is no merit to this assignment. A review of Dr. Austin's testimony indicates that he was permitted to give an expert opinion, and at no time was there an offer to introduce his written report into evidence. Dr. Austin, a forensic clinical psychologist, testified regarding the interview techniques for children who report sexual abuse, and questioned whether the interviewers' techniques in the current case were suggestive. He testified that he interviewed and tested Defendant and determined that his personality was not consistent with that of a child molester. At one point, the trial court refused to allow the doctor to comment specifically on the "implausibility" of one of the victim's report of sexual abuse. However, as we have noted, La.Code Evid. art. 704 prohibits an expert witness from expressing an opinion as to the guilt or innocence of the accused. Therefore, the trial court did not err in that instance when it sustained the State's objection to the doctor's comment.

30

This assignment of error lacks merit.

**Pro Se Assignment of Error Number 10:**

Defendant argues that his sentences, which total twelve years of imprisonment, are excessive. We have discussed this issue earlier in this opinion and determined that Defendant's sentences are not excessive under the circumstances of this case.

## CONCLUSION

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

31