NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-738

STATE OF LOUISIANA

VERSUS

M. S.  L.

********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR122476
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

********

ELIZABETH A. PICKETT
JUDGE

********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

Michael Harson
District Attorney, 15th JDC
Keith A. Stutes
Assistant District Attorney
P.O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
Counsel for Appellee:
State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
(337) 491-0570
Counsel for Defendant-Appellant:
M. S. L.

**PICKETT, Judge.**

## FACTS

The defendant, M.S.L., and the victim, I.S., were in a romantic relationship for approximately eight years, and they had two children together.[1] When the offense at issue occurred in September of 2008, the victim and her children were living at a homeless shelter in Lafayette. The defendant was a frequent visitor, despite the shelter's rules against having males on the premises. The victim had a protective order against him, but she invited him to come sleep at the shelter. Shelter officials had seen him on one occasion, but the victim told them he was her brother. They warned her that if they saw a male there again, she would be evicted.

In the weeks leading up to September 22, 2008, the victim began asking the defendant to stop coming to the shelter so frequently. The defendant continued to stay at the shelter, however, even during daylight hours. On the morning of September 22, the victim again asked the defendant to leave but he refused. The victim took a bus with her children, dropped them off at pre-school, then went to the technical college she attended. Later that morning, she contacted the defendant on MySpace to continue the discussion about their living arrangements. The defendant expressed jealousy because she "was friends with boys on MySpace." At about 11:00 a.m., the victim left school for lunch and again boarded the bus. The defendant was already on the bus. She had not expected to meet him but was not initially alarmed because they would often meet on the bus and go eat lunch. The defendant, however, suggested that she might be planning to print a page from MySpace, as evidence that he was refusing to leave. He then threatened to kill her and told her to stay on the bus

---

[1]Initials are used throughout this opinion to protect the identity of the victim as required by La.R.S. 46:1844(W).

1

until he allowed her to get off. She was able to distract the defendant, then surreptitiously wrote a note bearing her address and a plea to "call 911." When they got off the bus, the defendant got off first. The victim was able to pass the note to the bus driver.

The defendant and I.S. took different routes back to the shelter because he was trying to conceal his presence from management. The victim arrived first, but let him into the apartment because he threatened to break all the windows. Once inside, he began yelling and cursing. At some point, he grabbed her neck and pushed her toward the bedroom. Once there, he began beating and choking her. The defendant retrieved a knife from the kitchen, gave it to the victim, and told her to kill herself. Then he took the knife back, held it to her throat, and threatened to kill her. He asked her to take off her clothes, and she complied out of fear. Eventually, he applied Vaseline to her anus and penetrated her with his penis.

Afterward, she was able to make an excuse that she needed to go across the street to the office. When she did so, she asked the staff to call police. [2]

On December 3, 2008, a Lafayette Parish grand jury issued an indictment charging M.S.L. with aggravated rape, a violation of La.R.S. 14:42.

On January 13, 2010, the defendant filed a written motion to waive his right to a jury trial. On the same date, the trial court addressed the motion in open court. After questioning the defendant and his counsel, it began a bench trial. After hearing the evidence, the court found the defendant guilty as charged.

---

[2]When the bus driver received the victim's note, he was close to the end of his route. As soon as he reached the transit terminal, he gave it to his supervisor. In turn, the supervisor gave it to a police officer who was working as security at the terminal. By the time the officer received the note and called the dispatcher, police were already at the victim's apartment.

On February 1, 2010, the court sentenced the defendant to the mandatory term of life imprisonment. The defendant now seeks review of his conviction, arguing that the evidence was insufficient to support his conviction.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find one error patent.

The court minutes indicate the defendant was advised that he has two years to file for post-conviction relief. The sentencing transcript reveals the judge informed the defendant that he has "two (2) years from this date, the date your conviction becomes final, to file any Post Conviction Relief Petition." It is not clear whether the court was indicating that the defendant's conviction became final on the date of sentencing and that he has two years from that date to file for post-conviction relief, or whether the court first incorrectly stated that the defendant has two years from sentencing, and then corrected itself to say two years from the finality of his conviction to file for post-conviction relief.

According to La.Code Crim.P. art. 930.8, the prescriptive period for filing post-conviction relief is two years, and it begins to run when a defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922.

We remand this matter to the trial court, and the trial court is instructed to inform the defendant of the correct provisions of article 930.8 by sending appropriate written notice to the defendant within thirty days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. *State v.*

3

*Baylor*, 08-141 (La.App. 3 Cir. 11/26/08), 998 So.2d 800, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues the evidence adduced at trial was insufficient to support his conviction. The analysis for such a claim is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The relevant statute, La.R.S. 14:42, states in pertinent part:

> A. Aggravated rape is a rape . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

4

The defendant does not attack any particular element of the crime. Instead, he attacks the victim's credibility. He recognizes that witness credibility is not normally reviewed on appeal, but argues the victim's testimony is so incredible that the conviction should be reversed. He admits to beating her, but argues her testimony about the rape was given in retaliation for the beating.

Reviewing the victim's testimony, the defendant questions it on several points. First, he asks why she went back to the apartment after getting off the bus. In her testimony, she stated that she hoped the police would be there because of the "911" note she passed to the bus driver. The defendant suggests the note and her earlier MySpace contact with the defendant were attempts to entrap him. However, I.S. explained that she wrote the note because of threats the defendant made on the bus. As for the MySpace contact, the victim explained that sometimes it is easier to discuss difficult subjects by text-messaging than by speaking. Next, the defendant notes a portion of the victim's testimony which he argues is implausible. On cross-examination, she acknowledged that after they left the bus, she reached the apartment approximately a minute before he did. The defendant's trial counsel asked her why she did not call the police, and she testified she forgot she had a telephone. She explained that she had no phone for the first five months she was in the apartment. This explanation seems odd, but it is not so incredible that the trial court's credibility assessment of the victim should be second-guessed on review.

The defendant also claims that the victim "was very confused about who had the knife and when." On cross-examination, I.S. acknowledged that she had possession of the knife when the defendant told her to kill herself. She testified that she held it to her own throat at his instruction, then he took the weapon from her,

5

threatened to kill her, and put it back to her throat. While he still had the knife, she performed oral sex on him. She stated that when he told her to disrobe, he was no longer holding the blade to her throat. She added that she was not sure if he was even holding it at that point. She also acknowledged that from the time she disrobed, he did not threaten her with the weapon. She further acknowledged the defendant did not use the knife to make her "submit to the rape." While these points appear favorable to the defendant, they do not indicate the victim was confused about the whereabouts of the knife and do not indicate that her credibility should be reassessed on review. This court has explained:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. . . . This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

The testimony of I.S. does not meet the standard set forth in *Hypolite* and *Bourque*. Therefore, this portion of the defendant's argument lacks merit.

The defendant also complains the state's case lacked physical evidence to support the victim's testimony. As he points out, lab tests found no sperm or seminal fluid on swabs taken of the victim's vaginal, oral, anal, and external genital areas. The defendant states the testing did not find epithelial cells in those areas either, but the record is not clear on this point. He acknowledges testing found seminal fluids on the comforter and blanket, but argues there was no evidence regarding how old the

6

fluids or stains were. Similarly, he observes there were multiple abrasions and lacerations to I.S.'s anus, but no evidence about how old the wounds were. The victim testified she and the defendant had not had sex for two or three weeks prior to the offense. She told the examining nurse that she had consensual sex approximately three days before the rape, but the defendant argues she did not report whether she had anal sex at that time. The victim testified she did not have any anal bruising before the rape occurred. Pictures in the record reflect bruising, swelling, and tearing. She also stated that before putting the Vaseline on her anus, the defendant complained that she "never wanted to have sex with him anally before." During cross-examination, she indicated the offense was the first time she had ever had anal sex.

As for the lack of physical evidence, this court has stated, "[T]he testimony of the victim alone is sufficient to prove the elements of sexual offenses, including rape, despite the lack of physical evidence. *State v. R.W.W.*, 06-1253 (La.App. 3 Cir. 3/7/07), 953 So.2d 131; *State v. Fanguy*, 94-143 (La.App. 3 Cir. 10/5/94), 643 So.2d 860, *writ denied*, 94-2726 (La. 4/21/95), 653 So.2d 563." *State v. Gann*, 07-459, p. 7 (La.App. 3 Cir. 10/31/07), 969 So.2d 690, 694, *writ denied*, 08-335 (La. 10/31/08), 994 So.2d 528. We note the pictures in the record show physical findings of trauma to the victim's anus.

The defendant also suggests that even if the victim's testimony is viewed as credible, it supported a conviction for forcible rape, rather than aggravated rape. Forcible rape is defined by La.R.S. 14:42.1, which states in pertinent part:

> A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

7

(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

The defendant observes the victim testified he did not have the knife in his hand when he anally raped her. Further, he cites *State v. Touchet*, 04-1027, pp. 3-4 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 903-904, in which this court explained:

> After refusing once or twice, the victim removed her own clothing at the Defendant's prompting. She stated she probably would have removed her clothing even if he had not had the knife because she was the "underdog." After she removed her clothing, the Defendant "set the knife down" and "proceeded to come up on [her]." At that point the two had sexual intercourse.

> The victim testified that she did not want to have sex. The victim stated that she resisted the Defendant verbally, but did not get up and leave the room because she was scared. On cross-examination, the victim stated that other than saying no, she did not resist the Defendant in any way.

> The Defendant testified that he never held a knife to the victim's throat and raped her. The Defendant further testified that the victim never indicated to him that she did not want to have sex with him.

> In *State v. Jackson*, 03-1079 (La.App. 3 Cir. 2/4/04), 866 So.2d 358, *writ denied*, 04-1126 (La.10/8/04), 883 So.2d 1027, this court upheld the defendant's conviction of aggravated rape. In *Jackson*, the defendant forced two women upstairs at knife point, tied one of the women up with an electrical cord and put her in a hall closet. The victim testified that while he was tying up the other woman, the defendant told her to shut up "that he had killed a woman in Houston and he would not hesitate killing two more." *Id*. at 363. Then Jackson told the victim to go into a room. He approached the victim, twisted her shirt around her neck, placed the knife at her throat and said, "you do it or I do it." *Id*. at 364. The victim then requested that they go into another room, which she testified contained items that she could have used as a weapon. During the rape, the victim testified that Jackson did not have the knife, but still had a pair of scissors, which were either in his hand or on the floor near the victim's head during the rape. The victim stated that during the attack the defendant had one hand on his penis and the other hand on her shoulder holding her down; the scissors were on the floor next to her head. After raping the victim, Jackson forced her into a bathroom, took her shoes, tied the door shut from the outside and left in the victim's vehicle. In affirming Jackson's conviction, this court stated:

8

> In the present case, the occurrence of sexual intercourse is undisputed; the contested issue is whether the sex was consensual. R.M. testified the defendant had a knife to her throat when he ordered her to undress. Although the defendant put the knife down prior to the rape, R.M. testified the defendant had one hand on her shoulder and the scissors were near her head. Although it is not clear whether the scissors were actually in the defendant's hand during the perpetration of the rape, the jury was reasonable in determining that they were easily accessible to him.

*Id*. at 366.

> In the case at bar, unlike *Jackson*, the victim testified that the Defendant did not get near her with the knife. Also unlike *Jackson*, the victim did not testify that the knife or any other weapon was accessible to the Defendant during the commission of the sexual act. Accordingly, we find that the evidence viewed in the light most favorable to the prosecution is not sufficient to uphold a conviction of aggravated rape.

The state points out that the present case is more analogous to *Jackson* than to *Touchet*, as the defendant had the knife accessible to him during the anal rape. I.S. testified the knife and the Vaseline were on a dresser. The victim's testimony suggested – but did not explicitly state – the knife was nearby during the rape. Also, two of the exhibits show the defendant had easy access to the knife, as the dresser was near the bed. Further, I.S.'s testimony suggested that the defendant was able to easily take some Vaseline from the dresser and apply it to her anus. Thus, the trial judge could have reasonably determined the knife was accessible to the defendant during the anal rape.

The state also alleges that an oral rape occurred, since I.S. testified that before the anal rape, she performed oral sex on the defendant while he had the knife in his hand. Although the circumstances certainly suggest the victim performed oral sex due to fear, she did not testify to that effect. She did testifiy the defendant threatened to kill her if she bit his penis. This suggests the act was involuntary.

9

Under the *Jackson* standard, when viewing the evidence presented in a light most favorable to the prosecution, we find sufficient evidence to support the conviction of aggravated rape.

## CONCLUSION

The conviction is affirmed. The case is remanded for the trial court to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within thirty days of the rendition of this opinion and to file written proof in the record that the defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.